**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LAZIEL WEIDMAN, | ) | No. C 06-4113 MMC (PR) |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANTS'** |
| | ) | **MOTION FOR SUMMARY JUDGMENT** |
| v. | ) | |
| | ) | **(Docket Nos. 10 & 15)** |
| MICHAEL L. FRIEDMAN, et al., | ) | |
| Defendants. | ) | |
| _____ | ) | |

On June 30, 2006, plaintiff, a California prisoner currently incarcerated at the California Training Facility ("CTF") and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983 against six CTF officials.  On December 11, 2006, the Court found the complaint, when liberally construed, stated a claim against five of the defendants, specifically, Dr. Grewal, Dr. Dayalan, Dr. Ahmed, Dr. Rosenthal and Chief Medical Officer Michael L. Friedman, M.D. ("Dr. Friedman").  Now before the Court is the motion for summary judgment filed by Dr. Grewal, Dr. Dayalan and Dr. Ahmed.[1]  Plaintiff has filed an opposition,[2] to which defendants have filed a reply.

///

///

///

_____

[1]To date, Dr. Rosenthal and Dr. Friedman have not been served.  The Court discusses below the status of these two unserved defendants with respect to the instant proceedings.

[2]Plaintiff has titled his opposition "Motion for Opposition to Defendant's Motion for Summary Judgment." (Docket No. 15.)

Running left margin: **United States District Court** / For the Northern District of California

**BACKGROUND**[3]

On January 18, 2005, plaintiff was seen by Dr. Grewal for complaints of chest pain and breathing difficulty. (Compl. at 11 & Ex. A.) Dr. Grewal determined that plaintiff suffered from acid reflux, or GERD, which condition causes chest pain. Dr. Grewal prescribed plaintiff the medication Prilosec to treat the GERD. Dr. Grewal also ordered an EKG, to be sure that plaintiff was not suffering from heart disease; the EKG showed no sign of heart disease. (Decl. Dr. Grewal Supp. Mot. Summ. J. ("Grewal Decl.") ¶ 3.)

On February 2, 2005, Dr. Dayalan examined plaintiff after plaintiff complained that he was unable to play full-court basketball. Dr. Dayalan found the MRI plaintiff requested was not necessary; Dr. Dayalan did, however, order X-rays of plaintiff's chest, as well as blood tests, and advised plaintiff to lose weight. (Id. ¶ 4.) The results of the X-rays taken on February 4, 2005 were "normal to unremarkable findings." (Id. ¶ 4 & Ex. A.)

On February 24, 2005, Dr. Ahmed examined plaintiff and reviewed the results of plaintiff's blood tests. (Compl. at 12.) The blood tests showed plaintiff had high cholesterol. (Compl. Exs. C & D.) Dr. Ahmed noted that plaintiff's vital signs were normal and informed plaintiff that he was obese and needed to lose weight. Dr. Ahmed advised plaintiff about a low-fat diet and exercise. (Compl. at 12 & Exs. B & C; Grewal Decl. ¶ 5.)

On April 25, 2005, plaintiff was seen by Dr. Friederichs,[4] for the purpose of ordering refills of his medications; plaintiff also complained that he was suffering from fatigue, stomach pain and heartburn. (Opp. Ex. E.) Dr. Friederichs ordered a chest X-ray, which was taken on April 28, 2005; the X-ray showed no signs of heart disease. (Grewal Decl. ¶ 4 & Ex. A.)

Plaintiff continued to complain of chest pain and Dr. Dayalan ordered an "upper GI series" exam, which was performed on July 28, 2005. The exam confirmed that plaintiff was

---

[3]The following facts are undisputed and are derived from plaintiff's verified complaint and the parties' exhibits. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (verified complaint may be used as opposing affidavit under Rule 56 if based on personal knowledge and sets forth specific facts admissible in evidence).

[4]Dr. Friederichs is not a defendant to this action.

United States District Court
For the Northern District of California

1  suffering from GERD.  (Grewal Decl. ¶ 6 & Ex. B.)

2      Dr. Friederichs ordered a stress test for plaintiff, which was performed at Natividad

3  Medical Center on September 9, 2005.  (Grewal Decl. ¶ 7 & Ex. C.)  The test was positive

4  for ischemia, i.e., inadequate blood flow.  (Id.)  Based on the stress test, Dr. Friederichs

5  submitted a request for a cardioangiogram; the request was approved on September 15, 2005.

6  (Grewal Decl. ¶ 7; Opp. Ex. B at 3.)  On September 21, 2005, after plaintiff complained that

7  he was feeling very anxious about his heart, Dr. Friederichs made a follow-up phone call

8  about scheduling the cardioangiogram.  (Opp. Ex. A at 3.)  On September 27, 2005, while

9  plaintiff was still waiting for an available cardioangiogram appointment, he complained to

10 Dr. Friederichs that he was suffering from chest pain; Dr. Friederichs ordered that plaintiff be

11 transported to Salinas Valley Memorial Hospital for observation.  (Opp. Ex. C.)  At the

12 hospital, both an EKG and a cardioangiogram were performed to determine whether

13 plaintiff's arteries had blockage and whether he had coronary artery disease.  The results of

14 both the EKG and the cardioangiogram were normal, showing no signs of either artery

15 blockage or coronary artery disease.  (Grewal Decl. ¶ 7 & Ex. D.)

16     Plaintiff continued to complain of stomach pain; on October 15, 2005, Dr. Friederichs

17 ordered an endoscopy ("EGD").  (Opp. Ex. D.)  On November 6, 2005, Dr. Ahmed saw

18 plaintiff and informed him there was a delay in scheduling the EGD, but that Dr. Ahmed had

19 asked that it be expedited.  (Id.)  On March 10, 2006, the EGD was performed at Natividad

20 Medical Center by Dr. Tabbaa; the EGD showed symptoms of esophagitis, reflux, and

21 gastritis, which symptoms were consistent with the diagnosis of GERD.  (Grewal Decl. ¶ 9 &

22 Ex. E.)  Plaintiff was advised to resume his diet and continue with his medications.  (Id.)

23     On March 20, 2006, plaintiff was seen by Dr. Ahmed for a complaint of back pain.

24 Plaintiff noted he had a history of an old gunshot wound to his back; he was given pain

25 medication, and, on April 20, 2006, X-rays were taken of plaintiff's entire spine.  The X-rays

26 revealed no spinal problem.  (Grewal Decl. ¶ 11 & Ex. G.)

27     Plaintiff was seen numerous times by doctors at CTF for complaints concerning a

28 hernia; he was given an abdomen binder to wear around his stomach on August 9, 2005, but

3

on December 6, 2005 he told Dr. Ahmed he wanted to have the hernia surgically removed. On June 12, 2006, a CT scan of plaintiff's abdomen was done at Natividad Medical Center to rule out a ventral hernia, i.e, a hernia of the abdominal wall.  The CT scan showed no ventral hernia, but did show a small umbilical hernia.  It was determined that surgery was not recommended or necessary for the umbilical hernia, and that continued treatment with the abdominal binder was appropriate.  (Grewal Decl. ¶ 12 & Ex. H.)

Plaintiff also complained that he had a family history of colon cancer; although patients ordinarily are checked for colon cancer after age fifty, an early check was ordered for plaintiff when he was forty-two.  On September 4, 2006, plaintiff had a colonoscopy, performed by Dr. Tabbaa at Natividad Medical Center; the colonoscopy showed no signs of colon cancer.  (Grewal Decl. ¶ 10 & Ex. F.)  During the colonoscopy polyps were removed; they were sent to the laboratory and found to be benign.  (Id.)

## DISCUSSION

A.   Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

4

1  party").  The moving party bears the initial burden of identifying those portions of the record

2  that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to

3  the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the

4  'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts

5  showing that there is a genuine issue for trial.'"  See Celotex, 477 U.S. at 324 (citing Fed. R.

6  Civ. P. 56(e)).

7      For purposes of summary judgment, the court must view the evidence in the light most

8  favorable to the nonmoving party; if the evidence produced by the moving party conflicts

9  with evidence produced by the nonmoving party, the court must assume the truth of the

10  evidence submitted by the nonmoving party.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158

11  (9th Cir. 1999).  The court's function on a summary judgment motion is not to make

12  credibility determinations or weigh conflicting evidence with respect to a disputed material

13  fact.  See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

14  1987).

15  B.     Analysis

16         1.      Defendants Grewal, Dayalan and Ahmed

17      In his complaint, plaintiff claims defendants were deliberately indifferent to his

18  medical needs by failing to properly treat him for backache, difficulty breathing and

19  shortness of breath, failing to check for plaque build-up in the arteries in his heart, failing to

20  run tests for colon cancer, and failing to determine that he required a hernia operation and an

21  MRI.  Deliberate indifference to a prisoner's serious medical needs violates the Eighth

22  Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble,

23  429 U.S. 97, 104 (1976).  A determination of "deliberate indifference" involves an

24  examination of two elements: the seriousness of the prisoner's medical need and the nature of

25  the defendant's response to that need.  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.

26  1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136

27  (9th Cir. 1997) (en banc).

28      A prison official is deliberately indifferent if he knows that a prisoner faces a

United States District Court

For the Northern District of California

substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference."  Id.  Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom.  See McGuckin, 974 F.2d at 1060.

A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not amount to deliberate indifference.  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  In order to prevail on his claim, the prisoner must establish that the course of treatment doctors chose was "medically unacceptable under the circumstances" and that they chose this course in "conscious disregard of an excessive risk to plaintiff's health."  See Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004).  Here, the undisputed evidence demonstrates defendants did not disregard plaintiff's medical needs; rather, they provided plaintiff with a considerable amount of medically acceptable care.  Specifically, the undisputed evidence shows the following.

When plaintiff complained to Dr. Grewal on January 18, 2005 that he was suffering from chest pain and breathing difficulty, Dr. Grewal diagnosed the condition as GERD and prescribed plaintiff medication to treat the condition; to rule out heart disease as a potential cause of plaintiff's symptoms, Dr. Grewal also ordered an EKG; the EKG showed no sign of heart disease.

Similarly, when plaintiff, on February 2, 2005, complained to Dr. Dayalan that he was unable to play full-court basketball, Dr. Dayalan ordered blood tests and X-rays of plaintiff's chest and advised plaintiff to lose weight; the X-rays showed normal to unremarkable findings.  Although, plaintiff alleges Dr. Dayalan should have ordered an MRI as well, he presents no evidence showing Dr. Dayalan's determination, that an MRI was unnecessary, was medically unacceptable under the circumstances; plaintiff's disagreement with Dr. Dayalan's medical opinion does not create a genuine issue with respect to whether Dr. Dayalan was deliberately indifferent to plaintiff's medical needs under the Eighth

6

1   Amendment.  See Franklin, 662 F.2d at 1344.  Further, when plaintiff subsequently

2   complained to Dr. Dayalan that he was continuing to suffer from chest pain, Dr. Dayalan

3   ordered an "upper GI series"; that procedure, which was performed on July 28, 2005,

4   confirmed that plaintiff was suffering from GERD.

5          Likewise, with respect to Dr. Ahmed, the undisputed medical evidence reflects no

6   conscious disregard of an excessive risk to plaintiff's health.  On February 24, 2005, when

7   plaintiff saw Dr. Ahmed to review the results of plaintiff's blood tests, Dr. Ahmed told

8   plaintiff that plaintiff's vital signs were normal, but that he was suffering from high

9   cholesterol.  Dr. Ahmed informed plaintiff he was obese and needed to lose weight, and

10  advised plaintiff about a low-fat diet and exercise.  Thereafter, on March 20, 2006, when

11  plaintiff complained to Dr. Ahmed that he was suffering from back pain, Dr. Ahmed

12  prescribed pain medication and ordered an X-ray of plaintiff's entire spine; the X-rays

13  revealed no spinal problem.  When plaintiff, on December 6, 2005, complained to Dr. Ahmed

14  that he had a hernia he wanted surgically removed, Dr. Ahmed ordered a CT scan of

15  plaintiff's abdomen to rule out a ventral hernia.  The CT scan showed no ventral hernia, but

16  did show a small umbilical hernia; Dr. Ahmed determined that surgery was not recommended

17  or necessary for the umbilical hernia and that plaintiff should continue to wear his abdominal

18  binder to treat the condition.  Although plaintiff complains his hernia should have been

19  treated surgically, he presents no evidence showing Dr. Ahmed's determination, that surgery

20  was neither recommended nor necessary, was medically unacceptable under the

21  circumstances; as noted above, plaintiff's own opinion does not create a genuine issue as to

22  whether Dr. Ahmed was deliberately indifferent to plaintiff's medical needs under the Eighth

23  Amendment.  See Franklin, 662 F.2d at 1344.

24         Plaintiff asserts in his opposition that his having to go to the hospital on September 27,

25  2005, for complaints of chest pains, shows defendants' delay in treating his chest pains

26  amounted to deliberate indifference to his serious medical needs.  The undisputed evidence

27  shows, however, that prior to September 27, 2005, defendants did not delay in treating

28  plaintiff's chest pains; rather, they diagnosed plaintiff's chest pains as a symptom of GERD

7

United States District Court

For the Northern District of California

and ruled out heart disease by ordering X-rays, an EKG and blood tests.  Moreover, after plaintiff's stress test on September 9, 2005, showed plaintiff was suffering from inadequate blood flow, Dr. Friederichs ordered a cardioangiogram for plaintiff, and, on September 15, 2005, the request for the cardioangiogram was approved.  Thereafter, on September 21, 2005, Dr. Friederichs made a follow-up call with respect to the scheduling of the cardioangiogram, and on September 27, 2005, when plaintiff complained that he was suffering from chest pain, Dr. Friederichs transferred plaintiff to the hospital for observation.  Notably, there is no evidence that plaintiff suffered any harm as a result of the alleged delay in treating his chest pains; the EKG and a cardioangiogram performed at the hospital showed no signs of either artery blockage or coronary artery disease.  Further, while plaintiff argues that a delay in treating his chest pains caused him to suffer harm to his esophagus, he has presented no evidence of such.  Rather, the undisputed evidence shows that since January 18, 2005, plaintiff has been treated for GERD, a condition affecting his esophagus.  Plaintiff has produced no evidence demonstrating that other treatment was necessary for his chest pains or that such treatment would have prevented harm to his esophagus.

In sum, although plaintiff is of the opinion that Dr. Grewal, Dr. Dayalan and Dr. Ahmed failed to properly treat him for complaints of backache, difficulty breathing and chest pain, failed to order tests to check for heart disease and colon cancer, and failed to determine that he required a hernia operation and an MRI, he has not submitted any evidence that the medical treatment he received from Dr. Grewal, Dr. Dayalan and Dr. Ahmed was, in any manner, medically unacceptable under the circumstances.  Consequently, there is no triable issue of fact with respect to whether Dr. Grewal, Dr. Dayalan and Dr. Ahmed were deliberately indifferent to plaintiff's serious medical needs under the Eighth Amendment, and, accordingly, said defendants are entitled to summary judgment on plaintiff's claims.

2.   Defendants Rosenthal and Friedman

In its December 11, 2006 order of service, the Court directed the United States Marshal ("Marshal") to serve five defendants at CTF, where plaintiff indicated they were located.  The Marshal successfully served defendants Dr. Grewal, Dr. Dayalan, and Dr.

1   Ahmed, but returned the summons unexecuted as to Dr. Rosenthal and Dr. Friedman because

2   they could not be located at CTF.

3        On April 13, 2007, the Court issued an order noting that Dr. Rosenthal and Dr.

4   Friedman had not been served.  Pursuant to Rule 4(m) of the Federal Rules of Civil

5   Procedure, the Court ordered plaintiff, within thirty days, either to effect service on Dr.

6   Rosenthal or to provide the Court with an accurate current location such that the Marshal

7   would be able to effect service on Dr. Rosenthal.  To date plaintiff has not served Dr.

8   Rosenthal or provided the Court with an address at which Dr. Rosenthal can be served.

9        Also on April 13, 2007, the Court on its own initiative directed the Marshal to attempt

10  to re-serve Dr. Friedman at the California Mens Colony in San Luis Obispo, after the

11  Litigation Coordinator at CTF had informed the Marshal that Dr. Friedman was working at

12  that location.  On May 28, 2007, the Marshal returned the summons unexecuted as to Dr.

13  Friedman.  The unexecuted summons included a notation by the Marshal that Dr. Friedman

14  no longer works at the California Mens Colony; no forwarding address for Dr. Friedman was

15  provided.  To date, Dr. Friedman has not been served.

16       In cases wherein the plaintiff proceeds in forma pauperis, the "officers of the court

17  shall issue and serve all process."  28 U.S.C. § 1915(d).  The court must appoint the Marshal

18  to effect service, see Fed. R. Civ. P. 4(c)(2), and the Marshal, upon order of the court, must

19  serve the summons and the complaint, see Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir.

20  1994).  Although a plaintiff who is incarcerated and proceeding in forma pauperis may rely

21  on service by the Marshal, such plaintiff "may not remain silent and do nothing to effectuate

22  such service"; rather, "[a]t a minimum, a plaintiff should request service upon the appropriate

23  defendant and attempt to remedy any apparent defects of which [he] has knowledge."

24  Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987).

25       Here, plaintiff's failure to respond to the Court's April 13, 2007 order directing him

26  either to serve Dr. Rosenthal or provide the Court with a current location for service provides

27  sufficient grounds for dismissal of the claims against Dr. Rosenthal without prejudice

28  pursuant to Rule 4(m).  Further, in light of the unsuccessful second attempt to serve Dr.

United States District Court

For the Northern District of California

1  Friedman at a location within the state prison system, the absence of a forwarding address for

2  Dr. Friedman, and plaintiff's failure to remedy the unsuccessful service attempt by providing

3  the Court with an address at which Dr. Friedman can be served, there exist sufficient grounds

4  for dismissal of the claims against Dr. Friedman without prejudice pursuant to Rule 4(m).

5  See Walker, 14 F.3d at 1422.

6  Moreover, it is apparent that the claims against these defendants are without merit and

7  are appropriate for summary judgment irrespective of such defendants' lack of appearance in

8  the action.  See Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 803

9  (9th Cir.1995) (affirming grant of summary judgment in favor of nonappearing defendant

10  where plaintiff, in response to summary judgment motion filed by defendant who had

11  appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as

12  to claim against nonappearing defendant).  Accordingly, the Court finds as follows.

13  The allegations against Dr. Rosenthal in the complaint are that when plaintiff

14  requested an MRI in order to be screened for colon cancer, Dr. Rosenthal responded to

15  plaintiff as follows:

16  MRI scan is not indicated, as this test is not used for screening based on
   evidence-based scientific literature.  Presently you have no warning signs for
17  suspicion of colon disease so the request for colon screening is not indicated.

18  (Compl. at 11.)

19  As noted above, in support of their motion for summary judgment, defendants Dr.

20  Grewal, Dr. Dayalan and Dr. Ahmed have produced undisputed evidence showing that when

21  plaintiff complained to doctors at CTF that he had a family history of colon cancer, a

22  colonoscopy was performed at an outside medical center and no signs of colon cancer were

23  found.  (Grewal Decl. ¶ 10 & Ex. F.)  Polyps that were removed during the colonoscopy were

24  found to be benign.  (Id.)  Based on this undisputed evidence, the Court, as set forth above,

25  has found plaintiff has failed to show that Dr. Grewal, Dr. Dayalan and Dr. Ahmed did not

26  provide him with adequate testing for colon cancer in violation of the Eighth Amendment.

27  There is no suggestion in the complaint, the exhibits attached thereto, or in the briefs and

28  exhibits filed in connection with the present motion that the analysis differs with respect to

**United States District Court**
For the Northern District of California

1   Dr. Rosenthal.  Accordingly, the Court will grant summary judgment in favor of Dr.

2   Rosenthal.

3          The allegations in the complaint against Dr. Friedman are that Dr. Friedman, when

4   reviewing plaintiff's second-level administrative appeal, "agreed with all of the other

5   defendants diagnosis."  (Compl. at 12.)  As discussed above, plaintiff has failed to produce

6   evidence showing he did not receive constitutionally adequate medical care from any

7   defendant to this action.  As there is no suggestion in the complaint and the exhibits attached

8   thereto, or in the briefs and exhibits filed in connection with the present motion, that the

9   analysis differs with respect to Dr. Friedman, the Court will grant summary judgment in

10  favor of Dr. Friedman.

11                                    **CONCLUSION**

12         For the foregoing reasons, the motion for summary judgment filed by defendants Dr.

13  Grewal, Dr. Dayalan and Dr. Ahmed is hereby GRANTED and judgment in favor of said

14  defendants, as well as defendants Dr. Rosenthal and Dr. Friedman, shall be entered.

15         This order terminates Docket Nos. 10 and 15.

16         The Clerk shall close the file.

17         IT IS SO ORDERED.

18  DATED: March 21, 2008

19                                    MAXINE M. CHESNEY
                                      United States District Judge
20

21

22

23

24

25

26

27

28